UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In the Matter of
BOYSIN RALPH LORICK and CYNTHIA
THERESA LORICK
-------------------------------------------------------
SOLEYMAN GHALCHI,

                                                          Nos. 17-cv-5641 (ILG)
                              Appellant,                      17-cv-6344 (ILG)
                                                                (Consolidated)
        -against-
BOYSIN RALPH LORICK and CYNTHIA
THERESA LORICK,
                              Appellee(s).
-------------------------------------------------------


**APPELLANT BRIEF**



                              RICHARD J. MCCORD
                              ROBERT D. NOSEK
                              CERTILMAN BALIN ADLER &
                              HYMAN, LLP.
                              90 Merrick Avenue
                              East Meadow, New York 11554
                              Tel. (516) 296-7000
                              Fax. (516) 296-7111
                              *Attorneys for Appellant Soleyman Ghalchi*

# 1. TABLE OF CONTENTS

1. **TABLE OF CONTENTS** ........................................................................ 2

2. **TABLE OF AUTHORITIES** .................................................................. 3

3. **JURISDICTIONAL STATEMENT** ........................................................ 5

4. **ISSUES PRESENTED** .......................................................................... 7

5. **STANDARD OF REVIEW** .................................................................... 8

6. **STATEMENT OF THE CASE** ............................................................... 9

   a. **Auction Process and Debtors' Attempt to Stop Auction** ................ 9

     i. Court-Approved Bidding Procedures ........................................ 9

     ii. Debtors Attempt to Stop Auction ........................................... 10

     iii. The Auction Sale .................................................................. 11

7. **SUMMARY OF ARGUMENT** ............................................................. 16

8. **ARGUMENT** ...................................................................................... 18

   a. Choudhary Should Have Not Been Qualified to Bid at the ............... 19

   Auction Because His Financial Documents Did Not ......................... 19

   Reflect an Ability to Close a Sale Transaction ................................ 19

   b. Boysin Lorick Failed to Disclose His Substantial ........................... 21

   Relationship with Choudhary Thereby Destroying the ...................... 21

   Transparency On Which Good Faith Sales Are Based. ...................... 21

   c. The Bankruptcy Court Committed Reversible Error ........................ 22

   When It Based Its Decision That No Collusion ................................ 22

   Was Present Based on Its Finding that ............................................ 22

   Choudhary's Deposit Was at Risk .................................................. 22

   d. The Clear Newly-Discovered Evidence Concerning Boysin ............. 23

   Lorick's False Statement About His Relationship with ..................... 23

   Choudhary and Choudhary's Clear Inability to Close a .................... 23

   Sale Are Grounds to Reverse the Bankruptcy Court ......................... 23

   e. The Bankruptcy Court Limiting Its Collusion ................................ 23

   Analysis to "Actual Collusion" Was an Error as a Matter of Law ...... 23

9. **CONCLUSION** .................................................................................. 24

6511861.3

# 2. TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Express Merchants' Litig.*,
  554 F.3d 300 (2d Cir. 2009), *vacated on other grounds by Am. Express Co. v.*
  *Italian Colors Rest.*, 559 U.S. 1103, 130 S.Ct. 2401, 176 L.Ed 2d 920 (2010) ......................6

*In re Aquatic Dev. Grp., Inc.*,
  352 F.3d 671 (2d Cir. 2003)..................................................................................................7

*In re Blixseth*,
  No. 09-60452-7, 2010 WL 716198 (Bankr. D. Mont. Feb. 23, 2010)...................................16

*Boyer v. Gildea*,
  374 B.R. 645 (N.D. Ind. 2007) .............................................................................................21

*In re Colony Hill Assocs.*,
  111 F.3d 269 (2d Cir. 1997)................................................................................16, 17, 20

*District Lodge 26, Intern. Of Machinists & Aerospace Workers, AFL-CIO v.*
  *United Tech. Corp.*,
  610 F.3d 44 (2d. Cir. 2010)....................................................................................................6

*In re Emmons-Sheepshead Bay Dev. LLC*,
  518 B.R. 212 (E.D.N.Y. 2014) ...............................................................................................6

*Lone Star Indus., Inc. v. Compania Naviera Perez Companc (In re New York Trap*
  *Rock Corp.)*,
  42 F.3d 747 (2nd Cir. 1994)..................................................................................................16

*Overbaugh v. Household Bank, N.A. (In re Overbaugh)*,
  559 F.3d 125 (2d Cir. 2009)....................................................................................................6

*Shimer v. Fugazy (In re Fugazy Exp., Inc.)*,
  982 F.2d 769 (2d Cir. 1992)....................................................................................................4

**Statutes**

11 U.S.C. § 363(n) .....................................................................................................................16

28 U.S.C. §§ 157 and 1334 ..........................................................................................................3

28 U.S.C. § 157(b)(2)(A) and (N)................................................................................................3

28 U.S.C. § 158.............................................................................................................................4

3

**Other Authorities**

Federal Rule of Bankruptcy Procedure 8002 ............................................................................4

Federal Rule of Bankruptcy Procedure 8009 ............................................................................4

Federal Rule of Bankruptcy Procedure 9023 ............................................................................3

Federal Rules of Bankruptcy Procedure 8001 and 8003 ...........................................................4

Federal Rule of Civil Procedure 59 ..........................................................................................3

Federal Rule of Bankruptcy Procedure 9023 ............................................................................3

Federal Rule of Bankruptcy Procedure 9024 ............................................................................3

Federal Rule of Civil Procedure 60(b) ......................................................................................3

6511861.3

### 3. JURISDICTIONAL STATEMENT

On December 15, 2016 ("Petition Date"), Boysin Ralph Lorick ("Boysin Lorick") and Cynthia Theresa Lorick (collectively, the "Debtors") filed a voluntary joint petition for relief under Chapter 11 of title 11 of the United Sates Code (the "Bankruptcy Code"). *See* Record at 1 (hereinafter, "R."). The United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") has jurisdiction over the Debtors' case and the matters which are the subject of this appeal under 28 U.S.C. §§ 157 and 1334. Such matters are core proceedings under 28 U.S.C. § 157(b)(2)(A) and (N).

On September 11, 2017, the Bankruptcy Court entered an order approving a sale by the Debtors of their real property located at 3126 Coney Island Avenue, Brooklyn, New York 11235 (the "Property") to Soleyman Ghalchi ("Ghalchi" or the "Appellant") (the "Sale Order"). *See* R. 462-478. Prior to the entry of the Sale Order, on September 8, 2017, Ghalchi filed opposition to the entry of that order (the "Ghalchi Sale Objection"). *See* R. 208-291. After entry of the Sale Order, on September 11, 2017, Ghalchi filed a motion on an emergency basis under Federal Rule of Bankruptcy 9024 and Federal Rule of Civil Procedure 60(b) to set aside the Sale Order, which was later deemed by the Bankruptcy Court to be a motion under Bankruptcy Rule 9023 and Civil Rule 59[1] (the "Motion for Reconsideration"). *See* R. 292-329.

The Bankruptcy Court conducted a two-day evidentiary hearing on Ghalchi's Motion for Reconsideration on October 5, 2017 and October 6, 2017 (the "Evidentiary Hearing"), during which Norma Ortiz and Martha de Jesus, as counsel to the Debtors, both of the Debtors, Ghalchi, and Mohammad Choudhary ("Choudhary"), among others, testified. R. 582-1052. At the

---

[1] By order dated September 22, 2017, and entered September 25, 2017, the Bankruptcy Court deemed Ghalchi's motion filed on September 11, 2017, i.e., the Motion for Reconsideration, to be one requesting relief under Federal Rule of Bankruptcy Procedure 9023 and scheduled an evidentiary hearing on that motion. *See* R. 29.

6511861.3

conclusion of the Evidentiary Hearing, the Court rendered its decision on the Motion for Reconsideration and denied it. R. 1045-1051. Thereafter, the Bankruptcy Court signed an order on October 12, 2017 and entered on October 13, 2017, denying the Motion for Reconsideration (the "Order Denying Motion for Reconsideration"). *See* R. 37, 479-480. As reflected in the Motion for Reconsideration, in reaching its decision, the Bankruptcy Court considered, among other things, "the Amended Joint Pre-Trial Order and Exhibits 1-35 and 38-45 thereto, filed October 4, 2017 . . . Exhibits 36 and 37 to the Amended Pre-Trial Order, filed October 5, 2017; and [] all evidence adduced at the [Evidentiary Hearing.]" R. 480.

Pursuant to 28 U.S.C. § 158 and Bankruptcy Rules 8001 and 8003, this Court has jurisdiction to hear an appeal of the Sale Order and the Order Denying Motion for Reconsideration. On September 21, 2017, Ghalchi timely filed an Amended Notice of Appeal of the Sale Order within the fourteen-day period permitted under Bankruptcy Rule 8002, and timely filed a statement of issues and designation of the contents of appellate record within the deadline set forth by Bankruptcy Rule 8009. *See* R. 492-514. On October 26, 2017, Ghalchi timely filed a Notice of Appeal of the Order Denying Motion for Reconsideration within the fourteen-day period permitted under Bankruptcy Rule 8002, and timely filed a statement of issues and designation of the contents of appellate record within the deadline set forth by Bankruptcy Rule 8009.[2] *See* R. 483-491.

The Sale Order and the Order Denying Motion for Reconsideration are final orders because they resolved issues concerning the sale of the Property. *See, e.g.*, *Shimer v. Fugazy (In re Fugazy Exp., Inc.)*, 982 F.2d 769, 775-76 (2d Cir. 1992) ("[F]or a bankruptcy court order to be final within

---

[2] All transcripts of court hearings and conferences applicable to the appeal of the Sale Order were ordered prior to the deadline provided for under Bankruptcy Rule 8009. *See* ECF Doc. Nos. 97, 100, and 122. All transcripts of court hearings and conferences applicable to the appeal of the Motion for Reconsideration were ordered prior to the deadline provided for under Bankruptcy Rule 8009. *See* ECF Doc. Nos. 129 and 130.

6511861.3

the meaning of § 158(d), the order need not resolve all of the issues raised by the bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief.").

## 4.    ISSUES PRESENTED

On November 21, 2017, Ghalchi closed on the sale of the Property, at the $7,350,000 sale price. *See* Bankr. E.D.N.Y. ECF Doc. No. 198. Prior to that closing, Ghalchi appealed the entirety of the Sale Order and Order Denying Motion for Reconsideration. He continues to appeal the Order Denying Motion for Reconsideration in toto. However, at this point, he is only appealing that part of the Sale Order that found that the $7,350,000 sale price was obtained in good faith by the Debtors and was fair and reasonable and reasonably equivalent value. He seeks reversal of that finding, and a proper finding that his offer of $7,000,000 is the only one untainted by Choudhary's improper, last-minute allowance by Boysin Lorick to participate in the Auction. To that end, the following are the issues Ghalchi believes are properly before the Court on appeal.

(1)    Whether the Bankruptcy Court erred in finding as a matter of mixed law and fact in the Sale Order that (i) "the total consideration to be realized by the Debtors pursuant to the auction" is "fair and reasonable" and/or "reasonably equivalent value;" and (ii) that the Debtors did not engage in any conduct that would cause or permit the sale to be avoided when Choudhary was qualified as a bidder for the auction of the Property at the last minute by Boysin Lorick, with whom he had undisclosed significant business relationships, and based on documents that did not reflect an ability to close on a proposed sale of the Property.

(2)    Whether the Bankruptcy Court was clearly erroneous when finding that no collusion existed between Boysin Lorick and Choudhary based on Choudhary allegedly having a substantial deposit at risk and was purportedly prepared to close on a purchase of the Property after

the Auction when the evidence before the Court actually reflects that (i) Choudhary's deposit was never at risk because he was never confirmed as the Successful Purchaser under the Terms of Sale and (ii) the documents Choudhary utilized to allegedly establish an ability to close actually never reflected any such ability.

(3)     Whether the Bankruptcy Court erred as a matter of law by requiring Ghalchi to prove the existence of actual collusion as opposed to applying the proper legal standard that collusion can be inferred based on the circumstances.

## 5.     STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Overbaugh v. Household Bank, N.A. (In re Overbaugh)*, 559 F.3d 125, 139 (2d Cir. 2009). A finding will be found to be clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *District Lodge 26, Intern. Of Machinists & Aerospace Workers, AFL-CIO v. United Tech. Corp.*, 610 F.3d 44, 51 (2d. Cir. 2010) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Mixed questions of law and fact are reviewed "either de novo or under the clearly erroneous standard depending on whether the question is predominately legal or factual." *In re Am. Express Merchants' Litig.*, 554 F.3d 300, 316 n. 11 (2d Cir. 2009), *vacated on other grounds by Am. Express Co. v. Italian Colors Rest.*, 559 U.S. 1103, 130 S.Ct. 2401, 176 L.Ed 2d 920 (2010).

With regard to the Order Denying Motion for Reconsideration, this Court is to review such order for an abuse of discretion. *In re Emmons-Sheepshead Bay Dev. LLC*, 518 B.R. 212, 219-20 (E.D.N.Y. 2014). Such abuse of discretion exists when a court (1) "rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding"; or (2) "though

8

not necessarily the product of legal error or clearly erroneous factual finding[,] cannot be located within the range of permissible decisions." *In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003).

## 6.      STATEMENT OF THE CASE

### a.      Auction Process and Debtors' Attempt to Stop Auction

On June 9, 2017, the Debtors filed their Motion for an Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code (i) Approving Bidding Procedures and Certain Terms and Conditions of Sale, (ii) Scheduling the Deadline for an Auction and Hearing Date, and (iii) Authorizing Sale of Real Property "As Is" and "Where Is", Free and Clear of all Liens, Claims, Encumbrances, and Interests to sell the Property (the "Sale Motion").  R. 168-201.

#### i.      Court-Approved Bidding Procedures

By order entered July 26, 2017 (the "Bid Procedures Order"), the Bankruptcy Court granted the Sale Motion, in part, and approved bidding and notice procedures for the Debtors to use in conducting an Auction (the "Auction") of the Property.  R. 450-461.  The Bid Procedures Order established August 22, 2017 as the date of the Auction, with a hearing to approve the sale to the party selected by the Debtors at the conclusion of the Auction scheduled for Augusts 24, 2017.  R 451.  The bidding procedures were incorporated into Terms and Conditions of Sale (the "Bidding Terms"), which were signed by each of the participants in the Auction, including Choudhary and Ghalchi. R 134-151.  The Bidding Terms provide a multi-step process to participate in the Auction and clearly state that only a "Qualified Bidder" may participate in the Auction.  In order to be considered a "Qualified Bidder," a party must first have been qualified as a "Potential Bidder." R 134 at ¶ 6.  In order to become a "Potential Bidder," an interested person needed to deliver to Debtors' counsel "(1) a statement and other factual support demonstrating to the Debtors'

9

reasonable satisfaction that the Interested Party has a bona fide interest in purchasing the Property; and (2) current financial statements or other information deemed reasonably acceptable to the Debtors demonstrating the financial wherewithal to consummate the purchase of the Property." R. 134 at ¶ 6. After being deemed to be a "Potential Bidder" by the Debtors, that party needed to deliver to Debtors' counsel, among other things, (i) a minimum bid of no less than $5,200,000; (ii) "a cash deposit (via wire transfer or certified funds) . . . no less than . . . $520,000.00 . . .; and (iii) "proof of financial ability to consummate the purchase of the Property." R. 134-135. If the foregoing was done, that person would be declared to be a "Qualified Bidder" and permitted to bid at the Auction. R. 135.

The Bid Procedures also provide that only deposits of the party determined to be the "Successful Purchaser" and the "Second Highest Bidder" run the risk of forfeiting such respective deposits in the event they do not comply with the Bid Procedures for increasing their deposit to 10% of their respective highest bid. R. 136-137 at ¶¶ 12-14. Parties not deemed by the Debtors to be the Successful Purchaser or the Second Highest Bidder were entitled to a return of their deposits. R. 136 at ¶ 12. As a result, until the Debtors selected their Successful Purchaser and Second Highest Bidder, the deposits of the Qualified Bidders were not at risk of being forfeited.

      ii.      Debtors Attempt to Stop Auction

On August 21, 2017, the day prior to the scheduled Auction, the Debtors sought emergency relief from the Bid Procedures Order to provide the Debtors additional time to finalize a transaction with Choudhary and a third-party lender that was proposed to result in the Debtors obtaining financing sufficient to pay off their creditors (the "Debtors' Emergency Motion"). R 22-23, 60-128. The transaction with Choudhary (the "Proposed Financing") provided that he would purchase a 10% interest in the Property from the Debtors in exchange for $600,000 and lend an additional

$1,200,000 to the Debtors on an unsecured basis.  He also agreed to co-sign and guaranty a loan brokered by ERG Advisors in the usable amount of $3,000,000, as reflected in a letter from ERG Capital Advisors (the "ERG Letter") (R. 10704-1075), thereby allegedly providing the Debtor with $4,800,000 in which to pay creditors to avoid having to sell the Property at the Auction.  R. 120 at ¶ 9.  After a telephonic hearing, the Bankruptcy Court denied the Debtors Emergency Motion, and directed that the Auction be held on August 22, 2017 as previously ordered.  R. 23.

iii. <u>The Auction Sale</u>

The Auction occurred on August 22, 2017.  According to the Report of Public Sale of the Real Property Known as 3126 Coney Island Avenue, Brooklyn, New York, three bidders "pre-qualified to serve as bidders for the sale, prior to August 22, 2017 . . . ."  *See* R. 129 at ¶ 3.  Those three bidders were Ghalchi, Jack Geula ("Geula"), and Leon Goldenberg ("Goldenberg").  *Id.*

b. Last Minute Qualification of Choudhary as Bidder

On the morning of August 22, 2017, prior to the commencement of the Auction, "Mohammad Choudhary asked the Debtor Boysin Lorick if he could be qualified to bid."  *Id.* at ¶ 4.  Choudhary provided a check with certified funds in the amount of $700,000, and documents alleged to reflect his ability to close on a purchase of the Property (the "Choudhary Financing Documents").  R. 1053-1068, and 1074-1075.  That request brought an objection from Wells Fargo, N.A. as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1 (the "Lender"), and questioning from Ghalchi and his counsel concerning the relationship between Choudhary and Boysin Lorick.

11

c.    Objection to the Auction by Boysin Lorick

Prior to the commencement of the Auction, counsel to the Debtors placed a statement on the record of the Auction in front of all present at the behest of Boysin Lorick that he continued to object to the conduct of the Auction and his sale of the Property. R. 518 at 4:12-21.

d.    Objections to Choudhary as a Last-Minute Bidder

Also prior to the commencement of the Auction, the Lender, objected to Boysin's qualification of Choudhary as a last-minute bidder on the basis that he "was not a qualified bidder within the procedures of the bidding procedures order, which required qualified bids to be submitted by August 15." R.522 at p. 8:3-23. Furthermore, Ghalchi and his counsel questioned Boysin, through his counsel, concerning any relationship he had with Choudhary. R. 522-223 at pp. 9:15:2-10:2. The response from Boysin Lorick's counsel, after discussing same with Boysin Lorick (R. 524 at 10:3-8), was that there was no familial relationship and that he did not "share[] an interest in real estate, share[] an interest in a partnership or LLC or any other business venture with [Choudhary]." R. 524 at 10:9-16. There was no disclosure of the Proposed Financing, or any other business deals between Boysin and Choudhary in response to that questioning. *See generally* R. 515-552.

e.    Auction Bidding

The Auction involved spirited bidding among the four bidders until Goldenberg made his last offer of $6,650,000 (R. 536 at 22:24-25), then among three bidders until Geula made his last offer of $6,950,000 (R 540at 26:6-7), then solely between Ghalchi, starting at $7,000,000, and back and forth with Choudhary, until Choudhary offered a high bid of $7,400,000. R. 540-544 at 26:10-30:18. Thus, the Auction concluded with a high bid of $7,400,000 from Choudhary, the

second highest bid of $7,350,000 from Ghalchi, the third highest bid of $6,950,000 from Geula, and the fourth highest bid of $6,650,000 from Goldenberg.

f.      Continued Objections to Conduct of Auction Involving Choudhary

Following the Auction, Ghalchi and his counsel objected to having to pay more than Ghalchi's last bid in the event Choudhary was disqualified because Choudhary caused Ghalchi to increase his bid during the last round of bidding solely between those two individuals. R. 548-551 at 34:6-37:10. Ghalchi was also advised by Debtor's counsel that if Choudhary did not close as the successful purchaser, Ghalchi would proceed to close as the second highest bidder, not as the successful purchaser. R. 551-552 at 37:12-38:11. At the conclusion of the Auction, counsel to the Debtor made it clear in no uncertain terms to Ghalchi that his was the second highest bid, and that he would have 45 days to close on a sale of the Property in the event Choudhary was not able to close. *Id.*

g.      Lender Objection to Choudhary and Sale Hearing

On the morning of the Sale Hearing, Wells Fargo filed an objection to the Debtors' intention to submit Choudhary's $7,400,000 bid to the Bankruptcy Court for approval as the Successful Purchaser and Ghalchi's $7,350,000 bid for approval as the Second Highest Bidder. (the "Wells Fargo Objection to Choudhary") R. 202-207. Ghalchi was not served with the Wells Fargo Objection to Choudhary. R. 206-207. The Wells Fargo Objection to Choudhary opposed having Choudhary declared the Successful Bidder at the Auction for the Property because he had failed prior and subsequent to the Auction to submit documentation evidencing the financial wherewithal to close R. 204-505. There is nothing in the record to indicate that the proof Choudhary submitted to become a Qualified Bidder for the Auction was different than the proof

6511861.3

Debtors' counsel and Wells Fargo's counsel put forth as a basis to say that Choudhary lacked the ability to close.

Moreover, Wells Fargo expressed concern over Choudhary's relationship with Boysin Lorick in light of information contained in the Debtor's Emergency Motion. R. 204. The Well Fargo Objection to Choudhary was resolved by the Debtors disqualifying Choudhary and not submitting him as the Successful Bidder because of a lack of evidence of a financial wherewithal to close on his $7.4 million bid. Instead, the Debtors submitted Ghalchi as the Successful Bidder (not as the Back-Up Bidder). All of that was done without notice to Ghalchi and his counsel. R. 206-07, 555-56. Neither Ghalchi nor his counsel were present at the Sale Hearing. R. 555-556. There is nothing in the record to indicate that anyone ever advised Ghalchi or his counsel that Choudhary would be disqualified, rather than defaulted. It is also contrary to the Ghalchi Terms of Sale which only obligated Ghalchi to purchase the Property "in the event of the Successful Purchaser's Default" (R. 143), and what counsel to the Debtors had advised Ghalchi and his counsel at the conclusion of the Auction. R. 546-552.

h.    Boysin Lorick's Business Relationships With Mohammad Choudhary

As part of his efforts to assist Boysin Lorick with obtaining financing, Choudhary paid out no less than $54,000 toward refinancing his own property netting approximately $2,000,000 and attempting to obtain additional financing for the Debtors. R. 877. Choudhary believed that he had an agreement with Boysin that such amounts would be paid back. R. 877-878. In fact, Boysin Lorick testified during the Evidentiary Hearing that he paid back at least $25,000 of that amount prior to the Auction. R. 939-940 at 100:21-101:1. As a result, Choudhary was a creditor of Boysin Lorick at the time of the Auction because at least $29,000 was stilled owed by Boysin Lorick to Choudhary on Choudhary's advances on behalf of Boysin Lorick. Furthermore, the Proposed

14

Financing contemplated Mohammad buying 10% of the Property, with him lending an additional $1,200,000 to the Debtors on an unsecured basis, and co-borrowing with Boysin Lorick another approximately $3,000,000. R. 109-110. With regard to the Proposed Financing discussed above, one of the Debtors' counsel considered the Proposed Financing to be "a description of a future business transaction." R. 784-786 at 208:24 – 210:5. Separately, at least a month prior to the Auction, Choudhary had also proposed to purchase the Property for $6,000,000, with the parties proceeding to draft a contract of sale to that effect (the "Pre-Auction Purchase Offer"). R. 629-630 at 53:19-54:12; *see also* R. 156-167.

i.      Choudhary's Alleged Financial Wherewithal Documents

        In order to attempt to qualify to bid at the Auction, Choudhary submitted several documents to support his contention that he had the ability to be deemed a Qualified Bidder for the Auction, and, after bidding the Property up to $7,400,000, the ability to close on that sale as the Successful Bidder. R. 1053-1076. Those documents included: (i) a letter dated August 18, 2017 from Rodeo Capital to Choudhary (R. 1053-1061) (the "Rodeo Capital Letter"); (ii) a loan term sheet dated June 16, 2017 from Sharestates.com to Choudhary (R. 1062-1066) (the "Sharestates.com Letter"); (iii) two letters respectively dated June 20, 2017 and June 23, 2017 from GG Financial Corp. to "To Whom It May Concern" (the "GG Financial Letters") (R. 1067-1068); (iv) bank documents from Dime (the "Dime Bank Documents") (R. 1069-1070); (v) bank statements from Northfield Bank (the "Northfield Bank Statements," (R. 1071-1073) and collectively with the Dime Bank Documents," the "Bank Statements"); and (vi) the ERG Commitment.

        The Rodeo Capital Letter, which is not signed by either Rodeo Capital, Inc. or Choudhary, states that "Rodeo Capital is prepared to consider an application by [Mohammad A Choudhary] to provide financing for a business purpose in the form of a 1st mortgage loan. . . ." R. 1053. The

15

Rodeo Capital Letter discusses a possible lending of $3,200,000, of which only $3,000,000 would be available to purchase the Property. R. 1054. However, it expressly states that "[t]his letter constitutes neither a loan offer nor a loan commitment by Rodeo Capital, Inc. . . . " *Id.*

The Sharestates.com Letter proposes to lend $4,000,000 (R. 1062) secured by a "1st lien deed of trust/mortgage . . ." with "[n]o secondary financing permitted without lenders express consent." R. 1063. Like the Rodeo Capital Letter, the Sharestates.com Letter is unsigned. It also states that it expired on July 16, 2017, more than a month prior to the Auction.

The GG Financial Letters both indicate a loan commitment in the amount of $5,000,000 R. 1067-1068, with no other relevant information or terms except that it "need[ed] 30 days to close file." R. 1068. However, both letters are two months prior to the Auction, with nothing in the record to establish that such commitment was still good at the time of the Auction.

The ERG Commitment was for $3,200,000 to be secured by a first mortgage (R. 1074), was from a lender that had not even exist at the time of the letter (R. 1074) ("Lender: An Entity to be Formed"), but rather only from a mortgage broker (R. 1075) and required bankruptcy court approval. R. 1075. The ERG Commitment was the predicate for the Debtors' Emergency Motion (R. 67), which the Bankruptcy Court denied on the eve of the Auction. R. 23. Furthermore, the ERG Letter "automatically expire[d] 5 days from issuance," with the issuance date of August 16, 2017, meaning that a commitment, if any, in that letter expired by its own terms no later than August 21, 2017, the day prior to the Auction.

### 7. <u>SUMMARY OF ARGUMENT</u>

The Auction was tainted when (i) Boysin Lorick, being the final, interested arbiter on whether to allow Choudhary to be bid at the Auction, permitted him to do so notwithstanding insufficient documentation that Choudhary had the ability to close such a substantial transaction;

16

(ii) after unilaterally qualifying Choudhary to bid, Boysin Lorick failed to disclose the extent of his relationship with Mohammad Choudhary when directly asked about that issue by Ghalchi and his counsel prior to the start of the Auction. As a result, Choudhary was permitted to particapte in the Auction improperly, and ended up bidding up the price of the Property against Ghalchi after Ghalchi made a $7.0 million bid. The foregoing was exacerbated by Boysin Lorick's constant opposition to the Auction prior and subsequent to the auction.

Notwithstanding the evidence clearly in the record before the Bankruptcy Court, when it denied the Motion for Reconsideration, that court abused its discretion by making clearly erroneous factual findings that (i) Boysin Lorick's statement that he did not have a business relationship was merely "incomplete" (R. 1049 at 210:21-211:1); (ii) that Choudhary exhibited financial wherewithal to close on his purchase of the Property (R. 1048 at 209:6-9); and (iii) Choudhary's $700,000 deposit for the Auction was at risk and evidenced a lack of actual collusion between Choudhary and Boysin Lorick (R. 1047 at 208:2-4; 1048 at 209:2-15). Accordingly, the Bankruptcy Court should have granted the Motion for Reconsideration based on the new evidence, including that evidence that was not known by Ghalchi at the time the Sale Order was entered, and all subsequently discovered evidence.

Based on all of the evidence before it at the conclusion of the Evidentiary Hearing, and assuming the Court had those facts at the time it ruled on the Sale Motion, the Bankruptcy Court should have found the Auction process tainted, at least to the extent that Choudhary should have never been permitted to bid, and, therefore determined that the top clean bid for the Property was Ghalchi's $7,000,000 bid.

17

## 8.   ARGUMENT

These appeals are based on Boysin Lorick's failure to disclose the full extent of his relationship with Choudhary when directly questioned about it by Ghalchi immediately prior to the start of the Auction.  That failure to disclose undermines Boysin Lorick's unilateral decision to permit Choudhary to bid at the Auction as a Qualified Bidder even though the documents Choudhary used to allegedly support his financial wherewithal to close if he was a successful bidder clearly reflect no such ability.

The sale of a debtor's assets under § 363 of the Bankruptcy Code are premised on good faith and a transparent process.  *See e.g., In re Blixseth*, No. 09-60452-7, 2010 WL 716198, *10 (Bankr. D. Mont. Feb. 23, 2010) ("If the Trustee wants to pursue a sale process and conduct a fair auction intended to find the highest and best offer for the Family Compound, the sale procedures should be as a bona fide auction—with procedures as transparent and as flexible as possible. Specifically, the Trustee should formulate a proposal that encourages—and potentially rewards— all bidders to proffer their highest and best offers.").  The Bankruptcy Code provides certain protections to ensure that such sales are conducted in an above-board manner, free of collusion and the appearance of impropriety.  *See, e.g.*, 11 U.S.C. § 363(n); *Lone Star Indus., Inc. v. Compania Naviera Perez Companc, (In re New York Trap Rock Corp.)*, 42 F.3d 747 (2nd Cir. 1994).  In order to satisfy the transparent aspect of a bankruptcy sale, disclosure should weigh heavily in a bankruptcy court's decision when determining whether improper conduct, such as a debtor failing to disclose a significant relationship with a last-minute friendly bidder, has occurred. *See, e.g.  In re Colony Hill Assocs.*, 111 F.3d 269, 277 (2d Cir. 1997).  *Colony Hill* involved allegations of bid rigging between two bidders but is still applicable here because of the focus placed by the Second Circuit on disclosures made to the bankruptcy court before it rendered its

6511861.3

decision in that case. *Id.* There, the Second Circuit affirmed a bankruptcy court's finding that a party was a good faith purchaser notwithstanding alleged secret dealings with the debtor and creditors because the bankruptcy judge had presided over the case for many years and had all the relevant facts prior to making the good faith determination. *Id.* at 277-78. That is the opposite of what happened in the Court below.

a.    Choudhary Should Have Not Been Qualified to Bid at the Auction Because His Financial Documents Did Not Reflect an Ability to Close a Sale Transaction

Here, the evidence in the record clearly and unequivocally reflects two separate, but equally important, state of facts. First, because the documents on which Choudhary purportedly relied on to show financial wherewithal are insufficient to be deemed a Qualified Bidder under the Court-approved Bidding Terms, he should have never been permitted to bid at the Auction. In fact, none of his documents reflect an ability to close on a transaction, whether for $5,300,000 or his high bid of $7,000,000. R. 1053-1068, 1070-1075. There is no dispute that Choudhary did provide the Bank Statements, which reflect approximately $1,862,000 in available cash within a week of the Auction. R. 1070-1073.[3] However, the balance of the documents that purport to be loan commitments were either stale, expired, or not commitments at all. Accordingly, they are not a reliable indicator of any ability to close a transaction in excess of the cash Choudhary had available.

For instance, the ERG Commitment expired by its own terms the day prior to the Auction, because it "automatically expire[d] 5 days from issuance [August 16, 2017]," thereby lapsing in all regards on August 21, 2017. R. 1075. Furthermore, that purported commitment it is not from

---

[3] One of the Bank Statements is clearly dated after the Auction (R. 1069), but appears to have been included in the group introduced at the evidentiary hearing because it more clearly indicates the amount available in that account as reflected on the other Dime bank statement, which clearly is dated prior to the Auction. R. 1070.

19

a lender, but only from a mortgage broker, and, regardless, required bankruptcy court approval. R. 1074-1075. The Bankruptcy Court denied approval of the ERG Letter through its denial of the Debtors' Emergency Motion which was predicated on that letter. R. 23.

The Rodeo Capital Letter is unsigned by any party and, regardless, isn't even a commitment. In fact, it expressly states that "[t]his letter constitutes neither a loan offer nor a loan commitment by Rodeo Capital, Inc. . . . " R. 1054. At best it is a list of proposed terms subject to receiving an "application by [Mohammad A Choudhary] to provide financing for a business purpose in the form of a 1st mortgage loan. . . ." R. 1053. The Sharestates.com Letter expired the same day it was issued, i.e., July 16, 2017, which was more than a month prior to the Auction. Another common thread between the ERG Letter, the Rodeo Capital Letter, and the Sharestates.com Letter is that each required a first mortgage on the Property as security. None of them contemplated a second lien position. On August 21, 2017, the day prior to the Auction, Boysin Lorick admitted in a declaration submitted in support of the Debtors' Emergency Motion that all of the lenders he spoke with "will not lend if there is a second mortgage on the [Property]." R. 120 at 0182 9. As a result, only one of those letters could have formed the basis of a loan, and Boysin Lorick knew or should have known that. Although the GG Financial Letters both indicate a loan commitment in the amount of $5,000,000 (R. 1067-1068), they contain no other relevant information or terms except that it "need[ed] 30 days to close file." R. 1068. Both letters are two months prior to the Auction, and the record is devoid of any evidence that any commitment within the letters was still good at the time of the Auction. A reasonable inference that the GG Financial Letters were no longer valid can also be drawn from the fact that if they were still a valid commitment of $5,000,000, that was stronger than the ERG Letter on which the Debtors'

6511861.3

Emergency Motion was based, which would have supplied only $3,000,000. No other basis for qualifying Choudhary as a bidder for the Auction is reflected in the evidentiary record.

Accordingly, the Bankruptcy Court abused its discretion on a clearly erroneous basis by failing to find collusion based on Choudhary's illusory "desire" to close when the documents before the Court reflect a total inability to close.

> b. Boysin Lorick Failed to Disclose His Substantial Relationship with Choudhary Thereby Destroying the Transparency On Which Good Faith Sales Are Based.

The second critical issue is that Boysin Lorick failed to disclose the extent of his relationship with Choudhary even though he was directly asked about it by Ghalchi prior to the start of the Auction. In light of the extensive evidence that surfaced subsequent to the Sale Hearing through the Evidentiary Hearing, it was clear error by the Bankruptcy Court to find that such omissions were not material. Choudhry (i) refinanced his own properties to obtain money for the Debtors (R. 870-871 at 31:3-32:21); (ii) made the Pre-Auction Purchase Offer that involved the parties negotiating a contract of sale for the Premises for $6,000,000 (R.629-630 at 53:19-54:12; *see also* R. 156-167); (iii) sought out financing options for the Debtors that included Choudhary incurring his own expenses to do so (R. 871, 877 at 37:20-21); and (iv) willing to guaranty multi-million dollar loans for the Debtors. R. 1053-1068, 1074-1075. All of the foregoing exhibit significant business ventures, not friendly accommodations. As a result, Boysin Lorick's response to Ghalchi's inquiry into the extent of his relationship with Choudhary was not a minor omission of fact, or "incomplete" as the Court found, but materially false. And Ghalchi relied on that false representation when he engaged in bidding.

That falsity compounds the lack of transparency at the Auction because Boysin Lorick was the only person able to deem Choudhary a "Qualified Bidder," which he did notwithstanding his

6511861.3

lack of candor on the depth of his relationship with Choudhary.  He also qualified Choudhary as a bidder based on documents that clearly did not evidence a financial wherewithal to close a transaction, which is a requirement to be both a "Potential Bidder" as well as a "Qualified Bidder" under the Bidding Terms.  R. 134-135.

Unlike the bankruptcy court in *Colony Hill*, the Bankruptcy Court here did not have most of the facts for consideration at the Sale Hearing.  The Bank Statements and the ERG Letter were presented to the court for review, but that was done solely in the context of the Debtors' Emergency Motion, not confirmation of the results of the Auction.  The bulk of the facts came out only during the process of discovery and ruling on the Motion for Reconsideration after the Evidentiary Hearing.  Those facts, however, clearly establish that the Auction was a flawed and non-transparent process, and the Bankruptcy Court should have reconsidered, and revised, its good faith findings, at least as to the additional $350,000 of additional money that Ghalchi bid, which he would not have bid, but for Choudhary's improper participation in the Auction.  Its failure to do so is reversible error.

           c.        The Bankruptcy Court Committed Reversible Error
                    When It Based Its Decision That No Collusion
                    Was Present Based on Its Finding that
                    Choudhary's Deposit Was at Risk

The Bankruptcy Court's finding that Choudhary's $700,000 deposit was at risk and that he was "prepared to close" as a basis for concluding that no collusion occurred (R. 208-209) is contradicted by the Terms of Sale which clearly indicate that the deposit required under those terms did not become non-refundable, i.e., at risk, until the Bankruptcy Court approved a Successful Bidder and a Back-Up Bidder, with both deposits at that point becoming non-refundable.  All deposits for participants in the Auction that were not for the Successful Bidder and the Back Up Bidder were to be returned promptly to the unsuccessful bidders.  By virtue of

22

his disqualification prior to the Sale Hearing, Choudhary's $700,000 deposit was simply never at risk because he was never deemed to be, or approved by the Court as, either the Successful Bidder or the Back-Up Bidder. Accordingly, it was reversible error by the Bankruptcy Court to rest its conclusion that no collusion occurred because Choudhary's deposit was allegedly at risk.

> d. The Clear Newly-Discovered Evidence Concerning Boysin Lorick's False Statement About His Relationship with Choudhary and Choudhary's Clear Inability to Close a Sale Are Grounds to Reverse the Bankruptcy Court

As a result, with all of that taken together, this Court should be "left with the definite and firm conviction that a mistake [was] committed" when the Bankruptcy Court found that the Debtors did not engage in any conduct that would cause or permit the sale to be avoided, at least as to the amount of money Ghalchi bid over his $7,000,000 bid which would not have occurred if Choudhary had not been permitted to bid at the Auction. Accordingly, the Court should reverse, in part, the Bankruptcy Court's findings in the Sale Order that the "the total consideration to be realized by the Debtors pursuant to the auction" is "fair and reasonable" and/or "reasonably equivalent value," with the proper consideration to be $7,000,000, not $7,350,000.

> e. The Bankruptcy Court Limiting Its Collusion Analysis to "Actual Collusion" Was an Error as a Matter of Law

The Court also erred as a matter of law when it applied a standard requiring proof of actual collusion when collusion can be inferred from the circumstances. *See Boyer v. Gildea*, 374 B.R. 645, 660 (N.D. Ind. 2007) (in deciding whether the trustee put forth sufficient evidence for a claim under 363(n), the court noted that a reasonable trier of fact could infer collusion from the fact that one potential bidder did not submit a bid but purchased the assets from the highest bidder shortly after the sale). based on all of the evidence in the record, the Bankruptcy Court should have inferred that collusion occurred between Boysin Lorick and Choudhary. Such collusion is inferred

23

from (i) Boysin Lorick's ongoing opposition to selling the Property (R 22-23, 60-128, R. 518 at 4:12-21); (ii) Boysin Lorick deeming Choudhary to be a Qualified Bidder and permitting him to bid at the Auction notwithstanding the documentary evidence at that time that Choudhary did not have the financial wherewithal to close on a sale for an amount higher than the approximately $1.8 million in cash he had access to (discussed *supra*); (iii) even if Choudhary demonstrated the financial wherewithal to close on a $6,000,000 sale transaction, none of the documents evidence an ability to close on a $7,400,000, let alone a $7,000,000, sale for the Property (R. 1053-1068, 1070-1075); and (iv) in response to a direct question about his relationship to Choudhary, Boysin Lorick failed to disclose that he, in fact, had a close relationship with Choudhary, including several substantial attempted business transactions involving the Property, including on the eve of the Auction (discussed, *supra*). It is clear from the foregoing that the Debtors did not enter into the sale process, and conduct the Auction in a transparent and fair manner. As a result, collusion can be, and should have been, inferred sufficient to reverse the Bankruptcy Court's finding that (i) the $7,350,000 bid was "fair and reasonable" and/or "reasonably equivalent value;" and (ii) that the Debtors did not engage in any conduct that would cause or permit the sale to be avoided.

### 9.   CONCLUSION

For all of the foregoing reasons, the Court should find that the Bankruptcy Court abused its discretion in denying the Motion for Reconsideration and reverse the Order Denying the Motion for Reconsideration. Moreover, the Court should reverse the Sale Order to the extent it found that the $7,350,000 bid was "fair and reasonable" and/or "reasonably equivalent value", and instead find that Ghalchi's last, untainted bid of $7,000,000 is properly "fair and reasonable" and/or "reasonably equivalent value," and direct the Debtors to return the sum of $350,000 to Ghalchi.

24

Dated: East Meadow, New York      CERTILMAN BALIN ADLER & HYMAN, LLP
      February 1, 2018             Attorneys for Appellant


By:      /s/Richard J. McCord
           Richard J. McCord
           Robert D. Nosek
           90 Merrick Avenue
           East Meadow, New York 11554
           (516) 296-7000
           rmccord@certilmabalin.com
           rnosek@certilmanbalin.com

6511861.3